The next matter, number 23-1800, Sue T. Frost v. KCP Advisory Group, LLC. At this time, would counsel for the appellant please introduce herself on the record to begin? Thank you. Nicole Carnevale on behalf of the appellant, KCP Advisory Group, and I'm here with co-counsel, Attorney Alan David, to my left. May it please the Court? Please. KCP is a receiver of an assisted living facility appointed by the District Court. KCP was authorized to care for the facility and residents under the order appointing it receiver. It is undisputed that on January 17, 2022, the facility became unsafe and uninhabitable by Ms. Frost's own allegations. It is also undisputed that KCP exercised judgment under the receivership order to evacuate residents to a safe facility because of those conditions. The question today is whether the exercise of that judgment is protected by absolute quasi-judicial immunity. We submit that it is. I'll make three points to the Court today. One, KCP is absolutely immune from Ms. Frost's claims because of its quasi-judicial role. Two, the evacuation was a judicial act. So what authority do you have for that? And would a judge have had the authority to evacuate here in this context? Yes, Your Honor. Based on what? Based on adhering in the judicial function of managing an assisted living facility in poor conditions. Along with that, we believe comes the care of residents. And I believe the Court did acknowledge much later that it could have either authorized this or not. Are you also relying under the terms of the receivership order or not? Yes, we believe the receivership order appointed KCP the authority to do what it did, yes. What part of that order? There's a few provisions of the order that we rely upon. One is paragraph 27, and that can be found on page 134 of the record appendix. And the key language there is that the authority granted to the receiver herein is self-executing. The receiver is authorized to act in accordance with this order on behalf of and in the defendant's or the receiver's name, as the receiver deems appropriate without further order of this Court and without personal recourse against the receiver. And there's additional language found at paragraph 3, subparagraph BB, that the receiver shall take all such further actions and enter into all such agreements as the receiver in its professional discretion deems appropriate or desirable to pursue the objectives. Sorry, what page was that on the appendix? Paragraph 3B is on page 124 of the record appendix, Your Honor. And the last point I will make for the Court today is that the evacuation was within KCP's jurisdiction as receiver. Is this on a motion to dismiss? It is, Your Honor. And so it sounds like you're fighting at least what the district court understood the complaint to allege. Yes, Your Honor. How can you do that? It's not so much what the complaint alleges. Taking the allegations in the complaint at face value in the light most favorable to appellee as is appropriate. There are allegations of fraud and willful conduct, but those allegations have to be viewed alongside the underlying judicial act that they attach to. Well, let me just take two. Suppose what the complaint alleges is there was no actual emergency and this was a made-up ground so that they could dump the patients for financial reasons. Do we accept that as true for purposes of evaluating the immunity question? I think that we need to accept as true the allegations that were made, that the facility was in poor condition. That's not what I asked. They allege that there was a made-up emergency and that the removal was based not on the poor conditions, but based on the made-up emergency for purposes of dumping patients for financial reasons. Do we take that as true for purposes of this case? You have to take that as true. Okay, taking that as true, what is the basis for saying that there's immunity if that's what the conduct was? It still circles back to the underlying judicial act of evacuation of residents. But I had thought our case law wasn't so broad as that. It may be true for the judge herself that if she had made up a patient dumping scheme, which would be unlikely that the judge would do, but if she had, she would have the benefit of absolute immunity because she was doing it in the course of a judicial act. But for her agents, my understanding is they have to be acting at her direction, that what she prescribed them to do is the thing that's alleged. Then they have immunity for that. But there's no indication from the receivership order that they were told to have a patient dumping scheme based on a made-up emergency. Well, there's also no indication in the receivership order that the receiver didn't have an inherent level of discretion in managing the facility. The language about seeking authority for action. Like the Third Circuit and other cases say, we take these directions to have implicit within them, absent them saying otherwise, that you should do it lawfully. Sometimes the actual instruction given is such that to carry it out would be unlawful. But that's not this case. This is a case in which there was general discretion to manage the place. Then the allegation is the way it was carried out was through a trumped-up emergency for patient dumping purposes. If that's an actionable claim, there's nothing to suggest the receivership order prescribed doing that. So why would there be absolute immunity in doing it? I believe there would be absolute immunity because the conduct was still something that a judge could have done. I think that is the question. Whether a court could have taken that action? I thought our case law was whether the judge had directed it be done, not in theory could have it been directed. Is that reference to Kermit? Kermit and then just the general case law on derivative judicial or quasi-judicial immunity, which I haven't seen a single case that takes the view you're taking, which is essentially that the agents of the judge get the same degree of absolute immunity as the judge herself. I think that there's a few cases that are cited in KCP's brief that are instructive on this question. And I think Cock v. Cosentino would be one of them. That's a claim that a court-appointed guardian ad litem and conservator of assets of marital property engaged in a racketeering scheme. The Kermit case involved allegations of conspiracy. So I understand that the allegations do appear to be something that a court might not do, but that really isn't the question. It's could a court have done it? What's your best authority for saying that the question is could a court have done it, not whether it was done because the court prescribed that it be done? I believe the best authority for that would be Cock v. Cosentino out of the First Circuit. Okay. Because that does seem to equate quasi-judicial immunity with judicial immunity itself, because obviously the only things judicial immunity would apply to are things a judge could do. So if then anything that the agent does that the judge could have done gets absolute immunity, you're saying that they get equivalent degrees of immunity. I thought the case law was pretty clear that agents stand in a different position than the judge herself. I understood it to be that they were an extension of the court. They are an extension. That's why they get some immunity. You're suggesting they get the exact same degree of immunity as if they were in fact the judge? Yes, Your Honor. I don't know any case that says that. I thought that you were saying that because there was this broad grant of discretion that that in fact enabled the person to in effect act with the same discretion as the judge. That is what I'm arguing, Your Honor, yes. But I thought that the case law was that when we have just a general discretion to act, implicit in that is the idea that you will do it lawfully. So if you act unlawfully, you are at risk of liability, because generally judges will authorize their agents to act reasonably, do things within the scope of your activity, do what a prudent person would do. And if those types of things effectively immunize from any liability, the agent's tortious conduct, then the individuals are subject to all kinds of tort liability when there's no indication the judge had even the faintest notion of endorsing what was done. And you can prove out, I mean, the easy thing, you can always prove out at the next stage of the case that the allegations are false. We don't believe that it has to get to the next stage of the case. We submit that based on the record that is reviewable for 12B6 standards, the complaint, and other matters of record in the receivership action, that this was a judicial act, and it was not an act taken in the complete absence of jurisdiction. And those are the only two, if you attach them in the negative, would remove the absolute immunity here. The evacuation was a judicial act, because case law on this question directs us to look at the nature and the function of the act, and the conduct at issue is the evacuation. And KCP submits that evacuating residents under deplorable conditions is an act intimately associated with the management of an assisted living facility, which encapsulates resident safety. And it's the nature and the function of the act that must be considered, and allegations of malicious, fraudulent, and willful intent, so long as it underlies the performance of a judicial act, does not remove that immunity. And secondly, KCP had jurisdiction to do what it did. Only acts taken in the complete absence of jurisdiction trigger this exception, and the scope of jurisdiction is construed broadly for immunity purposes. And Sullivan v. Kelleher directs us that judicial immunity does not hang upon the determination of nice questions of jurisdiction. The distinction which must be observed is between excess of jurisdiction and the clear absence of all jurisdiction. See, like in Koch, we said there was no indication that any of their acts, the defendants, were taken without the sanction of the family court. But you couldn't say that here. There's no indication that the court sanctioned an illegal dumping scheme of patients. Authority was not sought from the court to perform the evacuation, but No, I'm not saying the evacuation. I'm saying you couldn't say that the alleged conduct, which we have to take to be true, was carried out with the sanction of the court. The question is whether it was discretionary under the order of that court, and we submit But that's not how Koch put it. I mean, Koch says there's no indication here it was carried out with the sanction of the family court. Without the sanction of the family court. There's no requirement in the order that KCP seek approval from the court to perform acts that it believed to be vital to the resident's safety. And so I think that's the distinction there. I thought Morales was maybe one of the best cases for you, but if you look at the way some other circuits have dealt with Morales in the context of quasi-judicial immunity, so not involving judges, they suggest that the manner in which the order was executed is something that should be considered. And in that case, we're back to where I think Judge Barron had us, which is the complaint here alleges that the manner in which the order was executed in terms of the evacuation was fraudulent or was dumping patients or whatever else. And so immunity doesn't apply in that circumstance. Do you have, you know, is there authority I'm missing even outside of this circuit that would suggest that that view is wrong? I don't have immediate authority available. I did brief that for the court after today's hearing. But I do think the case law instructs that for purposes of quasi-judicial immunity, it comes down to whether the act was judicial in nature and whether it was in the jurisdiction of the actor appointed. If every single action was exposed to scrutiny for not receiving an explicit grant of authority from the court that appointed it, there would be no purpose for quasi-judicial officials. Yes, there would be instances in which there was specific authority for it. Because in those instances, the agent would have a pretty good argument that, why are you holding me liable? I'm doing exactly what the judge told me to do, and the judge has absolute immunity, so I shouldn't be any different. If instead the judge says, here's some authority to do things, and then I carry it out negligently, why should I be immune any more than anybody else is? The judge is different. We're fortunate. We would have absolute immunity even if we were negligent. But why would we assume that all of our agents would have that? I think in practice that would make the quasi-judicial role very difficult to fill and would overburden the court by having to perform each and every judicial function themselves, and specifically appoint every single judicial function that they wanted performed. And with that, I'm happy to answer any more questions, but I would ask that this court reverse so much of the district court's decision that denied it the absolute immunity to which is proper. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the appellee would please introduce himself on the record to begin. May it please the court. David Suny for appellee Sue T. Frost. Thank you for your time today. I think the court's questions are incisive and go to the fundamental problem with the appellant's argument. It cannot be that the facts of the complaint, as the court well knows, have to be accepted as true. We have pled that there was an illegal resident dumping scheme where the receiver conspired with the lender to relocate the residents without their consent for financial reasons. We have also alleged that the receiver, in conjunction with its agent, lied to the court, as well as to the residents, or about the fact that there was this alleged evacuation order. Even the use of the term evacuation order is sort of slippery. If the building was on fire, which is not the hypothetical that we have here, obviously the people in charge would have to remove the residents and bring them back. This was not that kind of an evacuation, though, just to be clear. This was a planned and methodical relocation of residents against their will, without their consent, which was a class of residents who were subject to substantial harm because they had dementia, they had Alzheimer's, they were not competent. And there is a transfer trauma associated with that. And it was a wholesale relocation, but it was planned and it took place over the course of several days. As part of this scheme, what we alleged is that the receiver unilaterally reached out, in violation of HIPAA, to other assisted living facilities over the course of a week to find placements for these residents, so that when this alleged evacuation order, which supposedly came from the Tewksbury Fire Department, which the Tewksbury Fire Department has denied giving, they had a place to put these residents. And within the matter of three days, some 30-odd residents were relocated against their will and without their consent of their loved ones. In this case... of the receiver to try to place those residents in places that were in fact habitable. Yes, so... Or isn't that within the receiver's discretion? No, so for a couple of reasons, Your Honor. One is, when this proposed order, which was drafted by BI40 and reviewed by the receiver and given to Judge Saris to enter, it's like a 20-page order on the first day of the receivership proceeding, the Executive Office of Elder Affairs objected to the portions of the order that arguably gave the receiver that kind of discretion. I don't think it does, if you actually read the, parse the order. And Judge Saris doesn't think it does either, and she's the one that... Is that on the record? Yes. Is that on the record? It's on the record. So the residents didn't get any notice of this hearing, even though the receiver was telling the court that all parties had been notified. The residents... No, I'm saying, are the objections to the order by Elderly Affairs, is that on the record? Yes, it is, Your Honor. It's in... We attached the transcript of the first day order. So the EOEA came into court and said, we just want to make sure a couple of things are clear. The residents' leases need to be complied with. The leases had 30-day termination provisions. The second thing was, under EOEA regulations, there is a 90-day notice period in order to close an assisted living facility. So Attorney Paul Casey came in from the EOEA, and this is in our brief and it's also in the transcript, and everybody stepped up and said, we will absolutely honor the leases, we will absolutely comply with the 90-day closure requirements. And then the receiver fabricated an emergency, which did not exist. And by the way, we disagreed with the characterization that the facility was unsafe and uninhabitable. The very next day, the Tewksbury Fire Department said, stop the relocation, and the EOEA said, stop it and notify everybody, and the receiver didn't notify people. And the EOEA found that the receiver had violated the EOEA's order. So it's extremely troubling what happened here. Facts, I'm not trying to argue the ultimate facts of the case, but this is all in the record. Coincidentally, since we have parallel litigations going, we were able to take discovery, substantial discovery. In fact, discovery is almost complete, and this case is actually set for trial in June. She wants to get the case done. So discovery has happened. The Tewksbury Fire Department has taken public responsibility. Can I ask, would your position be the same? Suppose the order said take reasonable care of the residents, terminate leases if appropriate, blah, blah, blah. Yes. And then you said they terminated the leases when it wasn't uninhabitable. Yes. Period. Yes. Therefore, it's breach. Yes. Did they have immunity then? No. So the concept of terminating the lease means you have to send notice, 30-day notice, and then the other side has the opportunity to attack. Okay. Suppose they did all the notice, and the only thing you were contesting was whether it was uninhabitable. No allegation of a fake emergency or anything. Sure. They said we were terminating because it was uninhabitable. You say, no, we can show that it wasn't. Would they have immunity then? Yes, because they would. Because an interesting theme in the cases are, are the actions that are taken by the officer, were they actually adjudicated in the moment and approved by the court, or were they specifically authorized? So what happens is if, for example, you're a commissioner and you're ordered to cure building code violations, and the other side gets notice of that in the moment, which Frost did not have, and goes into court, and the court says you can cure the building code violations, you've had your opportunity to object. If the objecting party doesn't like the way the process went, the court's more inclined to grant immunity. But here that's not what happened. And how does qualified immunity versus absolute immunity figure into this? And at least Third Circuit, I think, in rejecting absolute immunity, nonetheless recognized that the receiver might have qualified immunity. Yes, so qualified immunity comes into play in this respect. First of all, the action needs to be an adjudicative function. There's two separate standards that need to be met. An adjudicative function, as well as a party, as well as the person acting without jurisdiction, which goes back to the issue of whether the order included this type of action. The adjudicative function was not present here. This was not a discovery master dealing with probate discovery issues or even a commissioner authorizing this. But take my uninhabitable case, in which the claim is you're simply saying they removed, when we're alleging it was not uninhabitable, and therefore they were, I guess, negligent or breached the contract when they didn't have a basis for doing so. And if there's no absolute immunity there, might there still be qualified immunity in that case just so that you would at least have to show it was quite clear that it was not uninhabitable? Because the point I think that the other side is making is that it wouldn't be very fun to be a receiver if every time I took any action I was subject to suit for any action I did. Maybe you don't have absolute immunity, but qualified immunity might be a way of managing that problem. So in that circumstance, though, to do something that violated the tenant's lease, the right to contest termination, and the 90-day provisions of the AOA order would violate what the receiver should have done, was come to court to seek approval, which is what Judge Saris said at oral argument. Not having come to court to get that specific issue resolved is fatal to the case. But even under the Residential Landlord Tenant Code, say for instance a flood knocked out heat and it was the middle of winter or something and the pipes froze, making it clear that the property was uninhabitable.  But at least until repairs are made, isn't that correct? Correct, but those are not the facts of this case. The facts of this case... No, but we're just trying to understand your immunity argument. Yeah. I think that if, as I think I mentioned before, if there was a genuine emergency that required tenants to be relocated, then if the building was on fire, for example, then you could certainly move the tenants out. But the facts of this case are different, which is a key distinction. I think it's a hypothetical. That's a good question, but the court does not have to address. In fact, five tenants remain... No, but what I'm trying to get... There's a spectrum. There's the case in which the building's on fire. There's the case in which you say, they thought it was on fire, but we can show it wasn't. And then there's another case, they made up the fire. Yes. You're the third case. Yes. Okay, and I understand why you say there's no immunity for the third case. Yes. Is there immunity in the second case where your claim is they're liable because there was no fire? Right. Potentially there is immunity in the second case if they're acting in good faith. But now that would be a qualified immunity, not absolute immunity. Yes. So even in that second case, you'd say there's no absolute immunity. Yes. So what's the case in which there's absolute immunity? The judge said, set the building on fire and then move the people out? Yes. And that's about it? Yes. Okay. Yes. I would point out that in particular in the case law, there is a theme that when you have the opportunity as the receiver to come to the court for directions, you should do that. And in the absence of having a specific provision that permits you to take the action that you're taking, you're at risk. Does the fact that your client was moved after the fire department said that there was no emergency bolster your case? Yes. The evidence establishes that the receiver tried to get this across the finish line and get the place vacated, which would allow it to go to the court. And by the way, the receiver went to the court later on an emergency basis to try to close the facility with five residents in it. It knew that it had to go to the residency, to the court to get the right to relocate these tenants. And that's why it fabricated the alleged evacuation order of the Tewksbury Fire Department. But to answer your question directly, Your Honor, yes. After it was ordered by the EOEA that the relocation of the tenants should be stopped, our client, my client, was relocated after that under false pretenses. And does that go to the absence of good faith in exercising discretion? Yes, Your Honor. Yes. And acting outside of the jurisdiction of the court. And the last point I'd like to make, and I'm happy to answer any additional questions, but we didn't file a cross-notice of appeal here, but I think it's within the court's discretion to reinstate two of the counts that Judge Saris dismissed. So she basically left the fraud breach of fiduciary duty, which, by the way, stands on its own. How can we look at that? You didn't file an appeal on that, right? We didn't file a cross-notice, but I think it's within the court's discretion to reinstate them. And the two counts are, the first count was simply breach of lease. What's the theory? What's the theory of abuse discretion? Yes, good question. The breach of lease goes to the fact that the termination notice wasn't complied with. And the second count is the breach of covenant of quiet enjoyment. The covenant of quiet enjoyment says, if you're in lawful possession of your rented apartment or your facility, the landlord will not disturb that. You can't just come in and change the locks. It can't just force you out. So I think those are, Judge Saris thought about those cases or those claims in the context of negligence, in the context of the fact that... But what's your theory as to why we have discretion to do that now? I don't have a specific case, Your Honor. I think that... You have a hope. Yes. Is it so integral to something that we necessarily have a right to decide? Is that what you're saying? Well, I think it goes part and parcel. I apologize in overtime, but I think it goes part and parcel with the 93A claim. The 93A claim resides in the... But if you're right and our rationale supports you, that rationale will be evident to everyone, and then whatever you want to do on remand can be done once you have that rationale. Sure. Thank you. Thank you, counsel. Counsel, that concludes argument in this case.